Versión para imprimir

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Federico Comas Montalvo<br>José M. Rosado Martínez | 2010 TSPR 229<br><br>180 DPR ____ |

Número del Caso: CP-2005-2

Fecha: 10 de noviembre de 2010

Abogados de la Parte Peticionaria:

          Lcdo. Gabriel García Maya
          Lcdo. Dixon Cancel Mercado
          Lcda. Margarita Carrillo Iturrino

Oficina del Procurador General

          Lcda. Mariana D. Negrón Vargas
          Subprocuradora General

          Lcda.Noemí Rivera De León
          Procuradora General Auxiliar

          Lcda. Maite D. Oronoz Rodríguez
          Subprocuradora General

Materia: Ordena el Archivo de la Querella.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

| | | |
|---|---|---|
| Federico Comas Montalvo | CP-2005-2 | Conducta |
| José M. Rosado Martínez | | Profesional |

PER CURIAM

San Juan, Puerto Rico, a 10 de noviembre de 2010.

Nos corresponde evaluar la procedencia de ciertas alegaciones de conducta impropia en contra de dos abogados por supuestas violaciones al Código de Ética Profesional, 4 L.P.R.A. Ap. IX, incurridas en la toma de una deposición a la perito de la parte adversa. Tras analizar detenidamente el asunto, concluimos que la conducta de los querellados no infringió los Cánones de Ética Profesional. Se trató, más bien, de una cuestión de derecho que fue evaluada y resuelta por el Tribunal de Primera Instancia al ordenar la supresión de la deposición en

controversia. Por lo tanto, ordenamos el archivo de la querella ante nuestra consideración.

I.

El Lcdo. Federico Comas Montalvo fue admitido a la práctica de la abogacía el 11 de diciembre de 1975 y de la notaría el 15 marzo de 1976. Por su parte, el Lcdo. José Rosado Martínez fue admitido al ejercicio de la abogacía el 3 de enero de 1990 y al de la notaría el 2 de mayo del mismo año.

El 14 de febrero de 2005 la Oficina del Procurador General presentó una querella en contra de los licenciados Comas Montalvo y Rosado Martínez. En ésta, se le imputaron a ambos abogados cinco cargos por alegadas violaciones a los Cánones de Ética Profesional, *supra*, relacionadas con una toma de deposición realizada durante la tramitación del caso Departamento de la Familia v. Raquel Olivencia y José Forestier, Núm. IMM 2002-0062, sobre la remoción de cuatro menores de la custodia de sus padres. Surge del expediente que el licenciado Comas Montalvo representaba a la madre de los menores a través del Programa de Práctica Compensada de la Corporación de Servicios Legales de Puerto Rico, mientras que el licenciado Rosado Martínez representaba al padre a través del Programa Pro-Bono.

En el transcurso del litigio, el 27 de agosto de 2002 se celebró una vista ante el foro de instancia en la cual los licenciados Comas Montalvo y Rosado Martínez

solicitaron realizar cierto descubrimiento de prueba.[1] Tanto la abogada del Departamento de la Familia, Lcda. Hilda Vélez Sánchez, como la Procuradora Especial de Relaciones de Familia para Situaciones de Maltrato, Lcda. Grace Casanova Castro, se opusieron a la petición de los abogados. El tribunal ordenó a los abogados a prepararse para una vista el 24 de septiembre de 2002.

El 3 de septiembre de 2002, el licenciado Rosado Martínez presentó ante el Tribunal de Primera Instancia una moción informativa para notificar que se proponía tomarle una deposición a la Dra. María Polanco Taveras, la pediatra que utilizaría el Departamento de la Familia como perito en el caso.[2] Junto con la moción dirigida al tribunal, presentó una notificación de toma de deposición dirigida a la doctora Polanco Taveras por conducto de la licenciada Vélez Sánchez. Allí se citó a la doctora Polanco Taveras para una deposición a tomarse el 12 de septiembre de 2002 en las oficinas del licenciado Comas Montalvo. El 9 de septiembre de 2002 la representación legal del Departamento de la Familia presentó en el tribunal una moción en

_____

[1]La minuta de esta vista no se notificó a las partes hasta el 13 de septiembre de 2002.

[2]La moción y la notificación fueron firmadas sólo por el licenciado Rosado Martínez y se certificó que se habían enviado a las licenciadas Casanova Castro y Vélez Sánchez, así como al licenciado Comas Montalvo.

oposición a la toma de deposición a la doctora Polanco Taveras.[3]

Llegado el día de la deposición, la doctora Polanco Taveras compareció al lugar indicado, mas las licenciadas Casanova Castro y Vélez Sánchez no asistieron. Aún así, los licenciados Comas Montalvo y Rosado Martínez tomaron la deposición a la doctora. Posteriormente, durante la vista celebrada el 24 de septiembre de 2002 ante el Tribunal de Primera Instancia, las licenciadas Vélez Sánchez y Casanova Castro alegadamente advinieron en conocimiento de la toma de deposición.

Al día siguiente de la vista, la doctora Polanco Taveras prestó una declaración jurada en la que afirmó, entre otras cosas, que el licenciado Rosado Martínez le había entregado copia de la notificación de toma de deposición; que le había indicado que la licenciada Vélez Sánchez estaría presente; que acudió a la deposición bajo la seguridad de que la licenciada Vélez Sánchez estaría allí y de que el documento que se le había entregado era un "documento oficial del tribunal"; que al llegar a la deposición no se encontraban presentes la licenciada Vélez Sánchez ni la licenciada Casanova Castro; que los

_____

[3]Según se desprende del propio escrito en oposición, éste fue notificado a la licenciada Casanova Castro y al licenciado Rosado Martínez, mas no al licenciado Comas Montalvo. Por otro lado, en su contestación a la querella, el licenciado Rosado Martínez sostiene que dicha oposición nunca se le envió. Debemos señalar que del expediente de la querella ante nuestra consideración no obra evidencia de que se haya enviado dicho escrito al querellado Rosado Martínez.

licenciados Rosado Martínez y Comas Montalvo accedieron a esperar un tiempo para darle oportunidad a las abogadas a llegar; que luego de esperar por alrededor de quince minutos el licenciado Comas Montalvo le indicó que tenían que empezar la deposición y ella se negó a prestar testimonio sin que la licenciada Vélez Sánchez estuviera presente; que el licenciado Comas Montalvo le indicó que si no deponía ese día "solicitaría del fiscal una orden de detención"; que al sentirse intimidada y asustada decidió contestar las preguntas que se le hicieran; y que todo ese intercambio se hizo antes de comenzar a grabar los procedimientos.

El 26 de septiembre de 2002, un día después de que la doctora Polanco Taveras prestara la referida declaración jurada y a los dos días de celebrada la vista en el tribunal de instancia, el Departamento de la Familia, a través de la licenciada Vélez Sánchez, presentó una moción en auxilio de jurisdicción en la que realizó varias imputaciones de conducta impropia a los licenciados Comas Montalvo y Rosado Martínez en cuanto a la notificación y toma de deposición. Asimismo, argumentó que no procedía la deposición de la doctora Polanco Taveras debido al carácter confidencial del procedimiento de remoción de custodia según la legislación vigente y solicitó, entre otros, la supresión de la deposición en controversia. Luego de varios incidentes procesales, el Tribunal de Primera Instancia emitió una resolución en la que determinó que la

toma de la deposición había sido contraria a las reglas vigentes por no haberse solicitado una citación del tribunal. Por lo tanto, ordenó la supresión de la deposición.

En mayo de 2003, la licenciada Casanova Castro presentó la queja que dio inicio al procedimiento disciplinario de epígrafe. Luego de la investigación de rigor, ordenamos a la Oficina del Procurador General a presentar la querella, en la cual se imputó a los licenciados Comas Montalvo y Rosado Martínez haber incurrido en violaciones a los Cánones 5, 15, 18, 35 y 38 de Ética Profesional, *supra*. Específicamente, se alegó que los abogados habían intervenido indebidamente con la testigo de la parte adversa al citarla para una deposición y tomarla sin la abogada del Departamento de la Familia. Asimismo, se les imputó haber hostigado a la doctora Polanco Taveras, haberle provisto información falsa, y haber faltado a la dignidad y honor de la profesión. Ambos contestaron la querella oportunamente y negaron los cargos imputados.

Como parte del procedimiento disciplinario, nombramos a la Hon. Ygrí Rivera de Martínez, ex Jueza del Tribunal de Circuito de Apelaciones, como Comisionada Especial. Tras varios trámites procesales, las partes estipularon ciertos hechos y prueba documental y se celebró la vista en su fondo en marzo de 2008. La Oficina del Procurador General presentó como testigos a la doctora Polanco Taveras, a la

licenciada Vélez Sánchez y la licenciada Casanova Castro. Por su parte, los querellados presentaron su propio testimonio, así como el de la taquígrafa que estuvo presente en la toma de la deposición, la secretaria del licenciado Comas Montalvo y el socio de éste.

Concluido el desfile de prueba, las partes presentaron sus respectivos memorandos de derecho y la Comisionada Especial rindió su informe. Determinó que la prueba no demostró que los querellados hubiesen violado los Cánones 15, 18, 35 y 38 de Ética Profesional, *supra*. No obstante, sostuvo que los licenciados Comas Montalvo y Rosado Martínez habían incurrido en conducta contraria al Canon 5, *supra*, al haber tomado la deposición de la doctora Polanco Taveras después de que ella hubiese expresado que no quería deponer sin la presencia de las abogadas del Estado, particularmente en ausencia de la licenciada Vélez Sánchez.

Sin embargo, consideró como factor atenuante el hecho de que los querellados no actuaron de forma intencional al tomar la deposición sin la intervención del tribunal, pues su conducta respondió a la interpretación jurídica que los licenciados hicieron de las normas procesales aplicables. Asimismo, señaló que ambos abogados sirven a la comunidad desinteresadamente y prestan servicios legales a personas de escasos recursos económicos, como los demandados en el caso en controversia, y que el proceso disciplinario ha sido largo y tedioso y ha causado tensión y sufrimiento para los querellados.

Sometido el informe ante nuestra consideración, procedemos a resolver.[4]

## II.

El Código de Ética Profesional, *supra*, recoge las normas mínimas de conducta que guían el comportamiento de los abogados y promueven el desempeño ejemplar de éstos en el ejercicio de su profesión. In re García Aguirre, res. el 2 de febrero de 2009, 2009 T.S.P.R. 21. Entre los deberes y responsabilidades que el referido Código le impone a los abogados, se encuentran medidas dirigidas a regular el comportamiento de los abogados en cuanto a su relación con sus clientes, con los testigos y jurados que participan en los casos, con sus compañeros abogados y con los tribunales y sus funcionarios.

A estos efectos, el Canon 5 de Ética Profesional, *supra*, dispone, entre otros asuntos, que es intolerable la intervención indebida de un abogado con sus testigos o los de la parte contraria. En este sentido, hemos expresado que es reprochable que un abogado intervenga indebidamente

---

[4]Cada uno de los querellados presentó sus comentarios en torno al informe de la Comisionada Especial el 21 de mayo de 2009. La Regla 14(l) del Reglamento de este Tribunal dispone que una vez notificado el informe del Comisionado Especial, "cada parte tendrá un término simultáneo de veinte (20) días, contados desde la notificación del informe, para ofrecer sus comentarios u objeciones, y sus recomendaciones en cuanto a la acción que deba tomar el tribunal". 4 L.P.R.A. Ap. XXI-A, R. 14(l). Se dispone, además, que "transcurrido dicho término, el tribunal resolverá lo que en derecho proceda". 4 L.P.R.A. Ap. XXI-A, R. 14(m). En vista de que el informe de la Comisionada Especial se notificó a las partes el 12 de marzo de 2009, ambos escritos fueron presentados fuera del término para ello, por lo que no los consideraremos.

con los testigos con el propósito de salir triunfante en las causas de un cliente. In re Vargas Soto, 146 D.P.R. 55, 63 (1998); In re Clavell Ruiz, 131 D.P.R. 500, 508 (1992).

A modo de ilustración, en In re Vargas Soto, *supra*, disciplinamos a un abogado por mentirle a un testigo y convencerlo para que abandonara el Tribunal, frustrando así la efectiva administración de la justicia, así como por pretender que un testigo variara su testimonio, requiriéndole que indicara haber olvidado o no recordar ciertos aspectos de su testimonio. Por otro lado, en In re Clavell Ruiz, *supra*, tomamos acción disciplinaria en contra de un abogado que intoxicó y emborrachó a una parte con el propósito de que firmara un documento en el que renunciaba a una herencia. De forma similar, en In re Colton Fontán, 128 D.P.R. 1 (1991), advertimos que constituye conducta profesional impropia la utilización por un fiscal de medios ilegales para obtener evidencia o emplear, instruir o estimular su uso por terceros.

De otra parte, el Canon 15 de Ética Profesional, *supra*, exige que los abogados traten con respeto y consideración a los testigos y abogados de la parte adversa. Por ello, los abogados deben ser siempre corteses y respetuosos y actuar con el mayor cuidado y prudencia. In re Irisarri Castro, 172 D.P.R. 193, 210 (2007); In re Matos González, 149 D.P.R. 817, 819 (1999). Además, el referido Canon dispone que el abogado no debe actuar motivado por la animosidad ni los prejuicios de su cliente ni debe permitir

que éste dirija el caso. El deber de defender vehementemente los intereses de sus clientes no implica que pueda incurrir en comportamiento imprudente. In re Vélez Lugo, res. el 27 de abril de 2009, 2009 T.S.P.R. 88; Quiñones v. Jiménez Conde, 117 D.P.R. 1, 7 (1986).

El Canon 15, *supra*, también prohíbe a los abogados utilizar los procedimientos legales de forma irrazonable o como mecanismo para hostigar a la parte contraria. No podemos perder de vista que los abogados son funcionarios del tribunal y deben velar por que los procedimientos se conduzcan correctamente y sin dilaciones innecesarias que socaven el fin último de los tribunales de impartir justicia. In re Martí Fajardo, 161 D.P.R. 351, 357 (2004).

Por su parte, el Canon 18, *supra*, dispone, en lo pertinente, que el abogado tiene el deber de defender a su cliente diligentemente y actuar de forma adecuada y responsable, según los estándares de la profesión legal. Aclara, no obstante, que este deber de diligencia no autoriza al abogado a incurrir en violaciones a la ley o a valerse de engaños para garantizar la victoria de su cliente, y señala que el abogado debe siempre actuar dentro de los límites de la ley, tomando en cuenta tanto su letra como el espíritu y los propósitos que la informan. Canon 18 de Ética Profesional, *supra*. Este Canon exige, pues, que el abogado represente a su cliente diligente, competente y honradamente, pero le prohíbe que incurra en actos contrarios a la ley o que se valga de engaños para lograr

adelantar los intereses de su representado. <u>In re Criado Vázquez</u>, 155 D.P.R. 436, 455 (2001); <u>In re Filardi Guzmán</u>, 144 D.P.R. 710, 717 (1998).

A tono con lo anterior, el Canon 35 de Ética Profesional, *supra*, impone a los abogados el deber de actuar siempre de manera sincera y honrada. Entre la conducta prohibida por dicho precepto se encuentra la utilización de medios inconsistentes con la verdad, el inducir a error a un juzgador, la distorsión o supresión de citas jurídicas para transmitir una idea contraria a la que realmente establecen, y la alteración de los hechos al examinar testigos, redactar documentos o presentar causas. Canon 35 de Ética Profesional, *supra*. Este deber de sinceridad y honradez comprende todos los ámbitos de la conducta profesional del abogado y le impone la obligación de conducirse siempre de manera digna y honorable, hasta en su vida privada. <u>In re Padilla Rodríguez</u>, 145 D.P.R. 536 (1998).

Asimismo, el Canon 38 de Ética Profesional, *supra*, impone al abogado el deber de esforzarse al máximo de sus capacidades para exaltar el honor y dignidad de la profesión. Para ello, le obliga a evitar hasta la apariencia de conducta impropia y a aportar para lograr una mejor administración de la justicia. En cuanto a esta disposición de nuestro Código de Ética Profesional, *supra*, reiteradamente hemos expresado que "cada abogado es un espejo en el cual se refleja la imagen de la profesión, por

lo que debe actuar con limpieza, lealtad y el más escrupuloso sentido de responsabilidad". In re Rodríguez Vázquez, 2009 T.S.P.R. 109, res. el 16 de junio de 2009.

Por otra parte, hemos pautado que el criterio probatorio a utilizarse en procedimientos disciplinarios es el de prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. In re Caratini Alvarado, 153 D.P.R. 575 (2001). Este criterio es más fuerte que la mera preponderancia de la prueba, pues los casos de disciplina ponen en juego el título del abogado y, por consiguiente, su derecho fundamental a ganarse la vida. Íd. En este sentido, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones fácticas son altamente probables. In re Ruiz Rivera, 168 D.P.R. 246 (2006); In re Rodriguez Mercado, 165 D.P.R. 630 (2005).

Por último, la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, dispone el trámite ordinario de los casos disciplinarios. Según dicho precepto, le corresponde al Comisionado Especial celebrar una vista para recibir la evidencia que se presente en contra del abogado querellado. En vista de ello, el Comisionado Especial está en mejor posición para aquilatar la prueba testifical y adjudicar credibilidad, por lo que sus determinaciones de hecho merecen nuestra deferencia. In re Morales Soto, 134 D.P.R. 1012 (1994). En este sentido, aunque este Tribunal

no está obligado a aceptar el informe de un Comisionado Especial en un procedimiento disciplinario contra un abogado, y podemos adoptar, modificar o rechazar tal informe, de ordinario sostendremos las determinaciones de hecho de un Comisionado Especial salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Pagán Pagán, 171 D.P.R. 975 (2007); In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642 (1994).

Con estos preceptos en mente, atendamos la controversia ante nuestra consideración.

## III.

Según mencionamos, la Comisionada Especial determinó en su informe que los licenciados Comas Montalvo y Rosado Martínez no habían incurrido en violaciones a los Cánones 15, 18, 35 y 38 de Ética Profesional, *supra*. Coincidimos con su apreciación. Las determinaciones de hechos que realizó la Comisionada demuestran que los querellados no hostigaron ni intimidaron a la doctora Polanco Taveras, ni se valieron de mecanismos fraudulentos para lograr la toma de la deposición.

Según se expone en el referido informe, el testimonio de la doctora Polanco Taveras fue confuso y contradictorio en este aspecto, y no mereció la credibilidad de la Comisionada frente al testimonio de los querellados y los demás testigos que se encontraban presentes. La evidencia apunta a que la doctora tuvo la oportunidad de hacer constar el estado de intimidación en el cual supuestamente

se encontraba. Sin embargo, no lo hizo aun cuando se le ofreció tal oportunidad al principio y al final de la toma de la deposición. Además, terminada ésta, la doctora no se comunicó con sus abogadas para relatarle lo sucedido, ni lo hizo en los días subsiguientes. Según declararon ante la Comisionada Especial, los testigos la vieron salir de la oficina en aparente estado de tranquilidad. Asimismo, se le concedieron tres días a la doctora para que leyera y objetara la deposición en caso de que ésta contuviera algo con lo que no estaba de acuerdo. Sin embargo, no hizo señalamiento alguno al respecto. Por todo lo anterior, concluimos que los licenciados Comas Montalvo y Rosado Martínez no cometieron las violaciones a los Cánones 15, 18, 35 y 38, *supra*, imputadas en cuanto a la toma de la deposición.

No obstante, no estamos de acuerdo con la apreciación de la Comisionada en el sentido de que los licenciados Comas Montalvo y Rosado Martínez incurrieron en conducta contraria al Canon 5, *supra*, al tomar la deposición de la doctora Polanco Taveras luego de que ella expresara que no quería deponer sin la presencia de las abogadas del Estado, particularmente en ausencia de la licenciada Vélez Sánchez.

Como muy bien reconoce la Comisionada en su Informe, "la controversia que ha dado lugar al presente procedimiento se acerca más a una de naturaleza jurídica que a una de carácter ético". Se trata, pues, de una cuestión jurídica que fue evaluada y resuelta en su día por

el Tribunal de Primera Instancia al ordenar la supresión de la deposición.[5]

Un estudio de nuestra jurisprudencia sobre el Canon 5, *supra*, revela que la supuesta intervención indebida de los querellados con la perito de la parte adversa palidece frente a las conductas impropias por las que anteriormente hemos disciplinado a abogados bajo este canon. En estas últimas ha estado presente la intención de frustrar la búsqueda de la verdad, tergiversándola u ocultándola, con el fin de obtener un triunfo. En la conducta de los querellados no hemos hallado indicios de que éstos obraron con tal intención.

De hecho, la evidencia demuestra que, en cuanto a la toma de la deposición, los licenciados Comas Montalvo y Rosado Martínez procedieron de la manera que entendieron apropiada y correcta conforme a derecho. En ese sentido, los querellados advirtieron al tribunal de su intención de tomar una deposición a la doctora Polanco Taveras y notificaron a esta última por conducto de una de sus abogadas, la licenciada Vélez Sánchez. Además, cuando la

_____

[5]El foro de instancia concluyó que los abogados actuaron incorrectamente al notificar personalmente a la perito sobre la toma de la deposición sin que mediara una citación expedida por el secretario del tribunal correspondiente, conforme a la Regla 40.4 de Procedimiento Civil de 1979, 34 L.P.R.A. Ap. III, y al no notificar de dicha deposición a una de las partes en el pleito, a saber, a la Procuradora Especial de Relaciones de Familia, asignada al caso, según lo requiere la Regla 27.2 de Procedimiento Civil de 1979, *Íd.* El tribunal de instancia entendió que estas "irregularidades procesales" eran serias, por lo que procedía la inadmisibilidad de la deposición.

doctora se percató de que sus abogadas no estaban presentes en el lugar de la deposición, los querellados ofrecieron a ésta la oportunidad de comunicarse por teléfono con sus abogadas, lo que hizo sin éxito. Asimismo, los querellados explicaron a la doctora que ella tenía la opción de irse y no contestar las preguntas, en cuyo caso ellos tendrían que acudir al tribunal y solicitar una orden judicial para poder obtener su testimonio.

Al evaluar si los querellados violaron el Canon 5, *supra*, al tomar la deposición luego de que la doctora Polanco Taveras expresara su deseo de no deponer en ausencia de sus abogadas, debemos también ser sensibles al hecho de que la doctrina sobre la toma de deposiciones avala que éstas se tomen en ausencia del abogado de la parte contraria a la se que toma la deposición. *Véanse* R. Hernández Colón, Derecho Procesal Civil, 5ta ed., San Juan, Ed. Lexis Nexis, 2010, Sec. 2910, pág. 312; J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Ed. Publicaciones JTS, 2000, T. I, pág. 519. Lo anterior fortalece nuestra convicción de que la controversia aquí planteada es de naturaleza jurídica y no ética.

La supuesta violación ética de los querellados es la consecuencia de haber actuado conforme a su mejor entendimiento del derecho procesal aplicable a los hechos. Aplicar el peso del Canon 5 en estas circunstancias sería contrario a nuestras expresiones en el pasado.

En vista de que la controversia aquí planteada se trata de un asunto de derecho que ya fue atendido por el foro de instancia, resulta innecesario dirimir esta cuestión en el ámbito disciplinario.

Por consiguiente, ordenamos la desestimación de todos los cargos y archivamos la querella ante nuestra consideración.

## IV.

Por entender que no se presentó prueba clara, robusta y convincente que nos permita concluir que la conducta de los querellados se apartó de las normas éticas que rigen la profesión de la abogacía, ordenamos la desestimación de los cargos y el archivo de la querella presentada en contra de los licenciados Comas Montalvo y Rosado Martínez.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

| | | |
|---|---|---|
| Federico Comas Montalvo | CP-2005-2 | Conducta |
| José M. Rosado Martínez | | Profesional |

SENTENCIA

San Juan, Puerto Rico, a 10 de noviembre de 2010.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se ordena la desestimación de los cargos y el archivo de la querella presentada en contra de los licenciados Comas Montalvo y Rosado Martínez.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo